# Green *versus* Scarlett.

1. Plaintiff held mortgages against two pieces of property situated upon the same street, and of a similar description, and, by mistake, sued out a *sci. fa.* upon the wrong property.   Judgment was obtained, and *lev. facias* issued against the property intended, and sale thereon and deed.   No title was passed by the sale.—*By the Dist. Court Philadelphia, approved by the Supreme Court.*

2. The law will construe the acts of the parties by their rights, and not by their intentions, and that a man who entered under a title which he has not will be remitted to the title which he really has.—*Id.*

3. A defendant in ejectment may resist his adversary by any title either in his own hands, or outstanding, that will defeat him.

ERROR to the District Court of *Philadelphia.*

Ejectment.

In the year 1835, George Cleaden was seized in fee of two adjoining lots of ground, with the three story brick messuages thereupon erected, situate on the west side of Delaware Fourth Street, in the city of Philadelphia, one at the distance of ninety-five feet and the other at the distance of one hundred and ten feet south from the south side of Carpenter Street.

On the 26th of February, 1835, he executed to Samuel Scarlett separate mortgages of these lots, each to secure the payment of $600 in one year.

Both mortgages were recorded on the day of their execution in mortgage book A. M., No. 22—that on the northern premises (which is now the subject of controversy) at page 406, &c., and that on the southern premises at page 407, &c.

On the 30th March, 1835, George Cleaden conveyed the property in dispute, *inter alia*, to Leonard Englebert, who, on the 16th September, 1835, mortgaged the premises conveyed to him to Daniel Green, to secure the payment of $2,000.

Scarlett brought suit on his mortgages in the District Court to March Term, 1840, Nos. 307 and 308.

In the case No. 307, the scire facias and the copy of the mortgage filed both describe the *premises one hundred and ten feet south of Carpenter Street,* but the certificate of record on the back of the copy of the mortgage refers to mortgage book A. M., No. 22, page 406, &c.   On examination it appears that the mortgage recorded in that book at that place is of *premises ninety-five feet south of Carpenter Street.*

In the case No. 308, the scire facias and copy of mortgage filed describe, as in the first case, premises one hundred and ten feet south of Carpenter Street.

Judgment was entered for want of an affidavit of defence in

each of these cases, and levari facias were issued to June Term, 1840, Nos. 17 and 17½.

The writ No. 17, issued in the first case, following the scire facias, describes premises one hundred and ten feet south of Carpenter Street, but in the writ No. 17½, issued in the second case, an attempt was made to correct the error which had crept into the proceedings by substituting for the description in the scire facias that of the premises ninety-five feet south of Carpenter Street. So far as *the record* shows, there was no authority for this act.

The properties were sold under these writs, bought by Scarlett, and on the 20th of June, 1840, were by separate deeds poll, duly conveyed to him by the sheriff.

Scarlett went into possession, and has remained so ever since.

In 1852, Emeline Green, administratrix of Daniel Green, brought suit on the mortgage before mentioned, from Leonard Englebert to her intestate, against Henry E. Wallace, administrator of Englebert, who was then deceased.

Judgment, execution, and sale followed in this suit, and on the 10th of January, 1857, the sheriff conveyed the premises ninety-five feet south of Carpenter Street, to the plaintiff.

On the title thus obtained, the plaintiff brought his action of ejectment against the defendant, and at the trial gave in evidence the deed, mortgage, record of suit, writ of levari facias, and sheriff's deed, together with the fact that both parties claimed through George Cleadon, as set forth in the bill of exceptions.

The defendant offered in evidence the mortgages, entries, records, writs, sheriff's deeds, and mortgage book, and the fact that the defendant had been in possession of the property in dispute ever since 1840.

The plaintiff objected to the evidence. The judge who tried the cause overruled the objection, and admitted the evidence, and the plaintiff excepted.

The defendant then read the said papers, records, &c., and closed.

Whereupon the judge reserved the point as to the right of the plaintiff to recover on the evidence, and directed the jury to find a verdict for the plaintiff.

And afterwards the court, upon full consideration, on the 23d day of January, 1858, entered judgment for the defendant on the point reserved, and filed the following opinion, all of which is assigned for error.

"The plaintiff and defendant both claim under the same person, the title of the plaintiff being posterior to the mortgage, which forms the foundation of the defendant's title. The defendant sued out, or rather intended to sue out, this mortgage,

[Green *v.* Scarlett.]

contemporaneously with another mortgage against the property next door, bearing the same date, between the same parties, and in all respects similar, except that the premises embraced in the second were situate in Fourth Street, 110 feet south of Carpenter, while those covered by the first are next adjacent on the north, and 15 feet nearer the corner of Fourth and Carpenter.

"This similarity led to the natural, but hardly excusable mistake, of issuing two writs on the second mortgage, filing a copy of it in each suit, and taking the judgments by default, which, although general, according to the somewhat loose course of our own practice, must yet be read and interpreted by the light of what precedes them as being specifically against the premises described in the writs on which they were founded.

"Under these circumstances we may doubt whether an amendment would have been possible, because there was nothing to amend by, everything being wrong from the precipe downwards, and the reference to the book in which the mortgage was recorded being equally erroneous with the recital of the mortgage itself. In point of fact, no amendment was attempted; the next step being to take the premises, situate 95 feet south from the corner of Fourth and Carpenter, in execution, under a *levari facias,* which was wholly destitute of legal validity, both judgments, as already stated, being against the adjacent property, 15 feet further from Carpenter. The levy was followed in due course by a sheriff's sale, at which the mortgagee became the purchaser, taking a deed from the sheriff, which pursued the *levari,* and was, like it, unwarranted by the judgment. Under these circumstances, we are clearly of opinion that no title was passed by the sale, but think it at least equally clear that no prior right was lost or relinquished, and that the defendant has a good possessory title under the first mortgage, which will sustain the possession gained by the entry which he made under the deed.

"Nothing is better settled than that the law will construe the acts of the parties by their rights, and not by their intentions, and that a man who entered under a title which he has not, will be remitted to the title which he really has.—*Doe* v. *Woodruff,* 10 M. & W. 608. The point would be clear apart from authority, but it was expressly decided in *Warder* v. *Tainter,* 4 Watts, 270–287. The rule for a new trial is discharged, and judgment entered for the defendant on the point reserved."

*F. Carroll Brewster,* for plaintiff in error, cited 3 Blacks. Com. 272; *Wilson* v. *McCullough,* 7 Har. 84; *Commonwealth* v. *Irwin,* 2 Ash. 330; *Ralston* v. *Cummins,* 2 Yeates, 436; *McDermott* v. *Ins. Co.,* 3 S. & R. 604; *Peters* v. *Ins. Co.,* 3 S. & R. 25; *Sherman*

[Green *v.* Scarlett.]

v. *Crosby*, 11 Johns. 70 ; *Jackson* v. *Stephens*, 13 Johns. 495 ; 1 Inst. 345.

*Aubrey H. Smith*, for defendant in error, cited *Johns* v. *Battin*, 6 Casey, 84 ; *Bunting* v. *Young*, 5 W. & S. 188 ; *Doe* v. *Woodruff*, 10 M. & W. 608 ; *Warder* v. *Tainter*, 4 Watts, 270–287.

The opinion of the court was delivered March 14th, 1859, by

THOMPSON, J.—In the court below, the learned judge, after hearing the evidence, reserved the point as to the right of the plaintiff to recover on the evidence, and directed a verdict for the plaintiff. Afterwards, on full consideration, the judgment was entered for the defendant, *non obstante veredicto*.

We fully concur in the learned judge's opinion in entering this judgment, and adopt it without further *elaboration* as the true and proper view of this case.

This disposes of all but one of the points argued here. The plaintiff in error complains that the defendant below on the trial relied solely on the title derived through the sale on the *levari facias*, and as that proved defective he could not fall back upon a good title.

A defendant in ejectment may resist *his adversary*, not only by any title in his own hands that will defeat him, but if he have not such, he may do so by any outstanding title that will have that effect. This, it is presumed, is not controverted, but the objection rather is, that by appearing to rely upon a bad title, the better one is waived. We take it for granted that in the trial the plaintiff below was not prevented from fully meeting everything that stood in his way of a recovery. We certainly perceive nothing to the contrary in this record.

The point reserved was the plaintiff's right under all the evidence to recover. The defendant's mortgage, as well as the fact of the possession under it, was part of the evidence. If the defendant did not fully declare what he intended to claim under this evidence, before closing the testimony, we cannot help the matter. Certain it is that he made his claim known at the argument of the reserved point, and this was his first opportunity to discuss the testimony.

It has been often ruled that a mere technicality is waived by a trial on the merits, and such was the nature of the cases cited by the plaintiff in error. And even a point of substance not made in time is not necessarily a ground for a new trial. But the point was not overlooked on the trial, nor was it *technical* by any means. But it would be extremely technical were we to determine that the defendant below seemed, on the trial, mostly to rely on the weaker of two titles, that he should not, before the close of the contest, avail himself of the stronger. If

[Bank of Northern Liberties *v.* Munford.]

a party overlook entirely a material matter in his case, it would be the duty of the court, in administering justice according to law, to give to it its proper effect in the case.

We see no error in this case, and the judgment is affirmed.