EMMA GAMBLE v. ROLLIN A. HORR.

*Contesting tax-titles—Comp. L., § 1130.*

One who assumes as owner to convey lands of which he has peaceable possession and occupancy, must be deemed *prima facie* to have the right to do so.

The tax law (Comp. L., § 1130) debars any claimant of land from disputing a tax-title on it, unless he shows that at the time of the tax sale or afterwards, he or the person through whom he claims, held a title acquired from the United States or from the

40 MICH.—71.

State of Michigan. *Held* not to apply to one who shows a title *prima facie* sufficient under common-law rules; and a *prima facie* case is established by producing such evidence as raises a presumption of title in the claimant, since all titles in Michigan are supposed to have been granted or originally recognized and confirmed by the United States or by the State.

Title by foreclosure dates from the giving of the mortgage and not from the completion of the foreclosure.

Error to Saginaw. Submitted April 10. Decided April 15.

EJECTMENT. Defendant brings error.

*O'Brien J. Atkinson* and *Elliott G. Stevenson* for plaintiff in error.

*Wisner & Draper* for defendant in error. The possessor of land is supposed to have acquired the title once held by the sovereign, *Hall v. Kellogg,* 16 Mich., 135; *McFarlane v. Ray,* 14 Mich., 465; *Day v. Alverson,* 9 Wend., 223; *Hicks v. Davis,* 4 Cal., 67; *Wood v. West,* 1 Blackf., 133; *Winans v. Christy,* 4 Cal., 70; *Keane v. Cannovan,* 21 Cal., 305; *Dale v. Faivre,* 43 Mo., 556; *Ricard v. Williams,* 7 Wheat., 105. For rulings upon statutes similar to Comp. L., § 1130, see *Lusk v. Harber,* 3 Gill, 161; *Curry v. Hinman,* 11 Ill., 430; Cooley on Taxation, ch. 10.

COOLEY, J. The action in the court below was brought by Horr to recover possession of three lots in the city of East Saginaw lying together and occupied as one parcel. To make out his title Horr proved the following facts:

1. That some time prior to February 6, 1873, one William Gallagher was in possession of and actually occupying said premises, and that he enclosed them and built a house thereon which he occupied with his family.

2. That while so occupying, and on the sixth day of February aforesaid, William Gallagher sold the premises to Roswell G. Horr, and executed to him a deed purporting to convey the same.

3. That on February 23, 1873, Roswell G. Horr sold the premises to John Gamble, and executed to him a deed of conveyance under which John Gamble went into possession.

4. That as a part of the transaction of sale John Gamble was to and did give a mortgage to Roswell G. Horr for ten thousand dollars, the purchase price of said premises, and covering the same, which mortgage was afterwards assigned to Rollin A. Horr, who foreclosed the same by advertisement under the power of sale, and received a deed on the foreclosure which became absolute May 7, 1878.

5. That John Gamble occupied the premises until his death, which occurred before this suit was brought, and that Emma Gamble is his widow and was in possession when this suit was instituted.

This showing made out a *prima facie* case for the plaintiff. William Gallagher having had peaceable possession and occupancy of the premises, and having assumed to convey them as owner, must be deemed *prima facie* to have had a right to do so; and his *prima facie* right is shown to have passed to Rollin A. Horr. This was a sufficient showing until in some manner it was met on the part of the defense. *Hall v. Kellogg*, 16 Mich., 135, 139; *McFarlane v. Ray*, 14 Mich., 465.

To meet this case defendant showed that the premises were sold for delinquent taxes of 1873 and 1874 to one Hoffman, who sold to one Garvey, and that Garvey brought ejectment against defendant and her children, the heirs at law of John Gamble, and took judgment against them by default; that he obtained possession under this judgment, but afterwards, and before Horr brought suit, put Mrs. Gamble in possession again, so that she occupied claiming under the tax-title subsequent to that time. Plaintiff then offered to show, and was allowed under objection by defendant to show, that the tax-title was wholly invalid and void. As it is not

questioned that this showing was ample if admissible, we need not examine or consider it.

The objection by defendant to this showing is made under Comp. L. § 1130, which provides that "no person shall be permitted to question the title acquired by such Auditor General's deed, without proving that he, or the person through whom he claims title, had title to the land at the time of the sale thereof for non-payment of taxes, or subsequently, which title was acquired from the United States or from this State." It is said with truth that plaintiff has not traced title to either the United States or to this State, and it is therefore insisted that by the express terms of the section he is precluded from questioning the tax-title.

If this section is strictly construed and applied, it is plain that the objection of defendant is well taken. If the contestant of a tax-title must in every case trace his title back to the government, this plaintiff is excluded, for he goes no farther back than William Gallagher in the showing he makes. But if that is the proper construction of the statute, it must operate very unjustly in a great many cases; for the cases are numerous in which titles which are perfectly good and based upon undoubted equities, cannot be traced back to the government. Every title based upon an adverse possession is of that sort, and there are many which must have originated in some government grant the evidence of which is lacking in some particular though no one questions its origin. It is not to be presumed that the legislature intended to preclude the owners of such titles from contesting illegal claims against them, unless the language of the statute plainly so declares. They are as well deserving the protection of the law as any others.

But as all titles in this State are supposed to have been granted or originally recognized and confirmed by the United States or by this State, it must follow that

when one produces such evidence as raises a presumption of title in him, according to the settled rules of law, this presumption must be sufficient to bring his case within the protection of this statute. "Title in a private person," it is said, "supposes a grant from the State or sovereign power." *People v. Trinity Church*, 22 N. Y., 44, 47. And when the law raises such a presumption, this negatives, because it is inconsistent with, any supposition that the government has never conveyed, or that, having conveyed, some other party now holds under its grant. The showing in this case was therefore sufficient: it made out a *prima facie* case which was in no way met, overthrown or weakened.

This view leaves ample scope for the operation of the statute in cases where it would be entirely equitable. A mere intruder or trespasser on unoccupied lands might well be precluded from contesting any *prima facie* title of another, and so might one who should attempt to defend under an outstanding title with which he is in no way connected. We cannot suppose the statute was intended to go further than to embrace these cases and others resting upon similar reasons. It certainly cannot embrace the case of one who shows a title *prima facie* sufficient under common law rules.

It is suggested that plaintiff was bound by the judgment in ejectment recovered by Garvey;—that judgment having been recovered before his title by foreclosure became absolute, and therefore before it could be said to have accrued. There is no force whatever to this suggestion. Plaintiff's right dates from the giving of the mortgage, and not from the completion of the foreclosure.

The judgment must be affirmed with costs, and the record remanded.

The other Justices concurred.