SARAH JOHNSON v. EDWARD JOHNSON, JR.

*Will—Effect of admission to probate—Ejectment—Evidence of title —Notice to quit—Stenographer's minutes.*

1. The validity of a will, duly admitted to probate, cannot be questioned by a contestant in an action of ejectment brought by a devisee claiming thereunder.

So *held,* where a testator willed all of his property to his wife (naming her), which will was contested by a son in the probate court and on appeal, and admitted to probate in both courts, and in an action of ejectment by the widow the son attempted to show, on the cross-examination of a witness who had testified to the marriage of the plaintiff and testator, and their continued cohabitation until the testator's death, that the testator had a wife living at time of said marriage, and that such fact was con-

70 MICH—5.

tested in the proceedings to establish the will, which testimony is held to have been properly excluded.

2. Parol evidence may be given of the contents of a lost notice to quit, on the refusal of the defendant to produce a copy.

3. *Possession* under a deed purporting to convey title, executed by one in peaceable possession and claiming title at time of its execution, is *prima facie* evidence of title in the grantee as against one showing no right in himself. *McFarlane v. Ray*, 14 Mich. 470; *Gamble v. Horr*, 40 Id. 563.

4. The admissions of a son in his evidence given on the trial of a contest over the probate of his father's will are competent evidence to show that the son was a tenant under his father at time of his death.

5. While a stenographer's minutes are not original evidence of the testimony of a witness, as held in *Toohey v. Plummer*, 69 Mich. 345, yet, if the party having the right to object points out certain portions which should be read, he cannot complain because of their admission in evidence.

Error to Wayne. (Reilly, J.) Argued April 13, 1888. Decided April 27, 1888.

Ejectment. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Henry M. Cheever,* for appellant.

*Conely, Maybury & Lucking,* for plaintiff.

[The points of counsel are so fully stated in the opinion that their restatement is omitted.—REPORTER.]

LONG, J. This is an action of ejectment, brought in the circuit court for the county of Wayne, to recover possession of lot 1, block 57, of the Labrosse farm, in the city of Detroit.

The cause was tried before a jury, who, under the direction of the court, returned a verdict in favor of plaintiff, and defendant brings error.

The plaintiff is the widow of Edward Johnson, Sr., who

died in December, 1883.    The defendant is the son of said deceased by a former marriage.

Plaintiff claims title to the premises under the last will of Edward Johnson, deceased.    Plaintiff's claim for recovery is not rested on her paper title, but on a possession under claim of title for more than the statutory period.    It is claimed by plaintiff that the defendant, who is in possession, was a tenant of his father under a renting from September to September of each year.

The deceased acquired his title from William C. Duncan under a deed, in which the land is described as—

"Lot one (1), in block fifty-seven (57), of the subdivision of the Labrosse farm."

The premises are described in the declaration as "lot one, block 57, of the Labrosse farm;" and several prior deeds, as well as the plat of the premises, were offered and received in evidence, and testimony given showing the property was known and called by the name as described in the declaration.

Plaintiff claims that her case was made out by her title under the will, possession by her husband and his grantors for more than the statutory period, the occupation by defendant, his tenancy under his father, its termination, and that the place was known and called "lot 1, in block 57, of the Labrosse farm."

It is now claimed by plaintiff that there was no evidence on the part of defendant controverting any of these propositions, but that all were fully made out by evidence concerning which there is no possible error, and, as the trial court directed the verdict, it should be sustained, even if it should turn out that some of the testimony was immaterial or unnecessary.

Defendant's claim is that, at the time of the death of Edward Johnson, Sr., he, the defendant, was in possession of the premises jointly with his father, and that on this account

it was necessary for plaintiff to show ouster, or some act equivalent to a denial of plaintiff's right of possession, in order. to recover.   Defendant also sought to show affirmatively that, while in such possession, he had never denied the right of his father, Edward Johnson, Sr., or of the plaintiff herself, claiming under his last will, to a joint occupancy.   Some claim is also made by defendant that, upon the trial, plaintiff sought to show paper title, and that, by reason of defects pointed out in some of the conveyances, plaintiff failed in thus establishing her title.

Plaintiff's only claim, however, made in this Court, is possession under claim of title for the statutory period; and we need not discuss this branch of the case, as the deeds and plat were properly received in evidence for the purpose of showing possession under them by Edward Johnson, Sr., and his grantors, as well as to show that the premises in controversy were known and called "lot one, in block 57, of the Labrosse farm."

Plaintiff called Mrs. Irwin as a witness, who testified that she knew plaintiff and her husband; was present at their marriage in Detroit over thirty years ago; that she continued to know them until Mr. Johnson died; that plaintiff had three children by Mr. Johnson, only one of whom is now living, and that they lived together until Mr. Johnson died.

Defendant, on cross-examination, sought to show by this witness that Edward Johnson, Sr., had a wife living in England at the time of his marriage to plaintiff, and that in the proceedings to establish the will that question was contested.

The court excluded this testimony, and defendant assigns such ruling as error.

In this the court was correct.

The will had been proved and established in the circuit court for Wayne county, after proceedings in both the pro-

bate and circuit courts, in which the defendant appeared as
one of the contestants.

By the terms of this will the plaintiff was given the title in
fee to these premises.    The validity of the will could not be
questioned in this case, and the record and proceedings in
the probate and circuit courts for the probate of the will were
properly received in evidence.

Plaintiff called D. C. Holbrook as a witness, who, being
shown a land contract from William C. Duncan to Bowker
& Blackmar, testified that it was the genuine signature of
Duncan, and that he was a witness thereto; that he knew
John Mason, and remembered his occupying the brewery
premises (the premises in question) over 30 years ago, and
Bowker & Blackmar occupied them afterwards.

Proof was also given of the occupancy of the premises by
Duncan, and also of the assignment of this contract from
Bowker & Blackmar to Edward Johnson, Sr.

Duncan was in possession and occupancy of the premises
prior to 1866, and Bowker & Blackmar went into possession
under their contract, and remained therein from April, 1866,
up to the time of the assignment of the same to Edward
Johnson, Sr., who went into possession under said contract.

Johnson having acquired the interest of Bowker & Black-
mar as grantees in the Duncan contract, Duncan deeded
directly to Johnson, October 13, 1870.

Proof was also given of the death of John Mason, and pro-
ceedings in the probate court for sale of the premises, and
their subsequent purchase by Duncan; the plaintiff thus
showing an actual possession and occupancy of the premises
in question by Edward Johnson, Sr., and his grantors, for
more than 30 years.

Other conveyances were put in evidence, under objection
by defendant's counsel, prior to the Mason title.    They do
not, however, become important, as the plaintiff is not claim-
ing under her paper title.

While Mason was in possession, the premises were used for the purpose of carrying on a brewery, and were known as the "Mason Brewery," and they have been used and occupied for such purposes since that time.

This action was commenced October 24, 1885.

On July 22, 1885, a notice to quit was served on defendant, signed by Mrs. Johnson, the plaintiff. Some question is raised over the proof made of the contents of this notice. The notice retained by plaintiff had become lost, and a notice was given defendant to produce the one served on him. This the defendant refused to produce, and parol evidence was given of its contents.

It is not seriously contended here that there was any error in receiving such evidence. We think the evidence was properly admitted.

Defendant's counsel on the argument here claims to rely most strongly upon the questions raised upon his twenty-fifth and twenty sixth assignments of error, which are as follows:

"25. The court erred in admitting in evidence defendant's testimony, as given on the will case, to show defendant's occupation was as a tenant under his father.

"26. The court erred in excluding the following questions put to defendant, Edward Johnson, on the stand, and excluding each of them :

" ' *a*—They have introduced your testimony on the other trial to show what you put in. How much did you put into that partnership, as a matter of fact?

" ' *b*—I will ask you how much of your money you put in there to pay for that brewery?

" ' *c*—How much did you finally get out of the partnership?

" ' *d*—I want to call your attention to the occupancy of this brewery, and I will ask you whether you were occupying that jointly with your father.

" ' *e*—Did you ever hear your father talk with any other person as to this occupancy of the premises?

" ' *f*—There has been some testimony they offered here about your paying money which the books did not specify was for rent, but which it was claimed was in the way of rent. State whether, at any time after that, and down to his death, you ever were paying rents,

under any contract or agreement with him to pay rent for the whole premises at a fixed sum.

" ' g—They have read your testimony here showing a statement by you that you paid them some money for rent. State whether or not that money which they claim that statement shows you said you paid, was a fixed amount for the whole of those premises by the year or by the month.

" ' h—Mr. Johnson, have you ever, to Mr. Johnson himself, your father, or to anybody representing him, to his last widow, or to anybody representing her, denied the right of Mr. Johnson, or his assigns or devisees, to the joint possession of these premises together with yourself ?

" ' i—Have you ever denied the last widow of Mr. Johnson, the plaintiff in this suit, her right to the joint possession or occupancy of these premises together with yourself,—either her right, or that of her legal representatives, to the joint possession and occupancy with you of these premises? Have you ever denied it?

" ' j—Mr. Johnson, referring to the testimony Mr. Conely read this morning given by you on the will trial, as to your payment of rent, or otherwise, I will ask now, is it true that your payments which you made to him—your father—during this time, were made in that way, —not showing they were for rent, or for any other particular purpose, but simply so much money paid to him?

" ' k—Aside from that, I ask him as a fact,—not as anything he and his father talked about,—what the fact was as to his payments to him, whether the payments were made to the father for rent, or for any other purpose.

" ' l—Did anybody for him?' "

Defendant's counsel insisted that defendant was in possession of the premises jointly with Edward Johnson, Sr., and that, therefore, such possession could not be adverse as to him (defendant), and that plaintiff, to recover, must, under the statute, in addition to other necessary proof, show an ouster by defendant of Edward Johnson, Sr., or actions which amounted to a denial of his right to possession, or of the right of plaintiff.

We do not agree with the learned counsel for the defendant in his propositions, under the circumstances of this case.

The case, as made by the plaintiff at the time defendant offered this testimony, was that William C. Duncan was in

possession, claiming title, over 20 years before suit was begun. He gave a land contract to Bowker & Blackmar, who went into possession. Edward Johnson, Sr., first bought the interest of one and afterwards of the other. He took his son Edward into partnership in the brewery business.

There was a dwelling-house upon the premises, as well as the brewery building. The father occupied this dwelling-house during the time the partnership continued. The partnership paid rent to the father during its continuance, which ended August 31, 1874, from which time the defendant carried on the brewery business, and occupied the house on the premises, as long as the father lived, under an agreement to pay an annual rent from September to September, at first at a fixed sum of $1,000 a year, and afterwards at such sum as he could afford to pay.

The father and son accounted together at the close of September in each year for rent, and closed it out. This was done as long as the father lived. The last accounting was in September, 1883, the last September of the father's life. The father died in December of that year.

The contest over the will continued till June, 1885. At its termination in favor of the plaintiff, she gave the notice to quit, waited three months, then began this suit.

The defendant on the trial in the court below, made no claim of title to the premises, except such as he acquired under his possession, and makes no other claim here, but relies solely upon the failure of plaintiff to make out her case, and his claim under his possession.

The title of Edward Johnson, Sr., is shown under the land contract and deed from Duncan, accompanied by taking possession. This is *prima facie* evidence of title as against one who claims no right in himself, and sufficient until it is in some manner met by the defense. *Gamble v. Horr*, 40 Mich.

563; *Hall v. Kellogg*, 16 Id. 135; *McFarlane v. Ray*, 14 Id. 470.

The plaintiff, to prove admissions of the defendant as to his holding the premises, and to prove his admissions that he was a tenant under his father, and was paying rent to him, called as a witness George Maitland, the official stenographer of the court, who took the testimony on the trial of the will case, and who testified that his minutes of testimony were accurate; then offered to read in evidence the testimony of defendant taken on that trial, showing defendant's admissions upon those questions.

This was objected to by defendant's counsel, as follows:

" I can see no way in which the testimony could possibly be claimed to be admissible, except as testimony tending to prove that the relation of landlord and tenant existed between old Mr. Johnson and this Mr. Johnson after old Mr. Johnson's death,—after the termination of the rightful tenancy. If that is the case, then there is no privity between old Mr. Johnson and defendant, and the admissions would not be admissible, because there is not any such thing as the privity of estate between a man who has died leaving a tenant in possession, and such tenant remaining there, and allowed to remain there by the administratrix, at sufferance, without the payment of rent. There is no such thing as a privity. The relation of landlord and tenant ceased to exist, and therefore the reason for giving this testimony ceased."

Defendant's counsel stated further:

" I do not understand that there is any rule of law that will allow this testimony to be read in this case. I understand that there is a rule which will allow them to select admissions made by a party, whether in court on a former trial or on the sidewalk,—anywhere,—and get the proper proof before the court of those admissions, if pertinent to the issue; but I do not understand that there is any rule to allow him to read this testimony from beginning to end. I submit that he must select such portions of it (if there are any portions) as will show an admission of Edward Johnson, Jr., as to a fact which is relevant to this issue, but he cannot go further."

By plaintiff's counsel :

"Very well, we will adopt that way, and will confine the reading to such portions as relate to the subject in controversy."

We do not think there is any force in the first objection made. If proof of the fact could be made in the manner proposed, it was competent for the purpose for which it was offered.

Defendant's counsel was undoubtedly correct in his second proposition, " that there is no rule of law which will allow this testimony to be read;" that is, read as original evidence in the case, as held by the Court in *Toohey v. Plummer*, 69 Mich. 345 (37 N. W. Rep. 297).

But counsel for defendant himself having pointed out what portions should be read, and plaintiff's counsel having acted upon that suggestion, defendant cannot now be heard to complain. These objections are not, however, very strenuously insisted upon.

The twenty-sixth assignment of error.is pointed directly to the refusal of the court to permit defendant's counsel to examine defendant in reference to such testimony as was then read. From this testimony it appears that he worked for his father in the Woodward avenue place till the fall of 1865, at which time his father went away, leaving him in charge of the Woodward avenue place for himself; that he remained there till March, 1868, at which time he left to go into partnership with his father in the brewery business, carried on on the premises in controversy, and he remained in partnership with his father till August 31, 1874, when the partnership ceased, and his father went away, and opened a place on Michigan avenue; that he has continued to occupy the brewery ever since, moving into the dwelling-house on the premises when his father moved out, and where he still lives; that he had paid rent to his father until he died, in 1883, amounting to several thousand dollars; that he took the place the first year after the close of the partnership, for $1,000,

and after that for as much as he could afford; and that his father owned the brewery. They had a settlement for the rent each year, and the renting was from September to September.

The questions put to the defendant by his counsel, and the ruling of the court thereon, appear in the statement of defendant's twenty-sixth assignment of error herein. The objection made was that it is a matter as well known to the person from whom he derived title as it is to this witness; that he is not a competent witness on this subject, and it is immaterial. It is not disclosed by the record upon what ground the court excluded this evidence, and it is not, as we view the case, necessary to determine it upon the first objection. Even if the witness was competent to testify to matters equally within the knowledge of his deceased father, upon which we express no opinion, we think the testimony wholly immaterial, and that the defendant was not prejudiced in his case by its exclusion. It had no tendency to prove title or possession in the defendant.

Defendant's counsel in this Court, when inquired of by the Court how he claimed title, replied that his claim was in his possession, and the plaintiff, if she was entitled to recover, must do so on the strength of her own title. Counsel makes no claim of any writing from Edward Johnson, Sr., to his son, or that the defendant had any rights in the premises except such as he acquired by his possession.

The proof is conclusive and uncontradicted that Edward Johnson, Sr., went in under claim of title derived through the Duncan contract and deed, and that all the rights the defendant had was as tenant under his father.

We do not think, from the whole testimony, that defendant was in a position to dispute plaintiff's title, which came to her through the will. The court properly directed a verdict for the plaintiff. We find no error in the record, and

the judgment of the court below must be affirmed, with
·costs.

SHERWOOD, C. J., and CHAMPLIN, J., concurred.    CAMP-
BELL, J., did not sit.